## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN MARCHETTI             :
                              :
                              :     **NO.: 15-CV-4676**
                              :
        **v.**                       :
                              :
                              :
**PAROLE AGENT DIRENZIO, ET AL.**    :

### NOTICE OF MOTION

TO:    John Marchetti
        C/O Matthew B. Weisberg, Esquire
        WEISBERG LAW PC
        7 SOUTH MORTON AVE
        MORTON, PA 19070

        You are hereby notified on this 12th day of January, 2017, that the attached **Motion for Summary Judgment** is being filed with the Court.  According to the Court's Scheduling Order, (Document 52), if you wish to oppose said Motion, you must serve a Brief in Opposition, together with such Answer or other response, on or before February 2, 2017.  In the absence of a timely response, the Motion may be treated as uncontested.

                       Respectfully submitted:

                       **DiORIO & SERENI, LLP**

By:    **/s/ Robert M. DiOrio** _____
                 **ROBERT M. DIORIO**
                 I.D. No.: 17838

                 **/s/ Matthew H. Fry** _____
                 **MATTHEW H. FRY**
                 I.D. No. 83131
                 Front & Plum Streets
                 P.O. Box 1789
                 Media, PA 19063
                 (610) 565-5700

Date: <u>January 12, 2017</u>

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN MARCHETTI** | : | |
| | : | |
| | : | **NO.: 15-CV-4676** |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **PAROLE AGENT DIRENZIO, ET AL.** | : | |

**ORDER**

AND NOW, this _____ day of _____, 2017, after consideration of

Defendants Delaware County and Officer Raymond's Motion for Summary Judgment, and any

response thereto, it is hereby ORDERED and DECREED that the Motion is GRANTED and

Plaintiff's Second Amended Complaint is DISMISSED as to Defendants Delaware County and

Officer Raymond with prejudice.

BY THE COURT:

_____
JOEL H. SLOMSKY          J.

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN MARCHETTI** | : | |
| | : | |
| | : | **NO.: 15-CV-4676** |
| | : | |
| v. | : | |
| | : | |
| | : | |
| **PAROLE AGENT DIRENZIO, ET AL.** | : | |

### DEFENDANTS, DELAWARE COUNTY AND OFFICER RAYMOND'S
### <u>MOTION FOR SUMMARY JUDGMENT</u>

1.      This action was commenced via Complaint on August 17, 2015. (Document 1)

2.      Answering Defendants filed a Motion to Dismiss on September 22, 2015 and in response Plaintiff filed an Amended Complaint on November 5, 2015.  (Documents 13, 29).

3.      Plaintiff's original Complaint asserts multiple claims against various defendants at different locations, claiming that he was held past his sentence because of an alleged false representation made to the Court by persons from the Pennsylvania Department of Probation and Parole, and then transferred to the George W. Hill Correctional Facility, wherein he claims that he was unjustly placed in solitary confinement and then housed (by Officer Raymond) with a mentally unstable inmate who spread bodily fluids throughout the cell and could have been infected with HIV.  (Document 1, ¶21-22).   Answering Defendants are Delaware County and Officer Raymond.

4.      Plaintiff's Amended Complaint states that the Plaintiff was placed in solitary confinement for several weeks by Defendant Delaware County and that Defendant Raymond allegedly escorted the Plaintiff to an area of the prison reserved for mentally unstable prisoners. (Document 29, ¶15-16).

5.      After oral argument, Plaintiff filed a Second Amended Complaint that alleged that Defendants Officer Raymond and Delaware County 1) kept Plaintiff in solitary confinement knowing that this would aggravate his PTSD (Count I); 2) failed to provide Plaintiff with medication at the proper dosage or at proper times; 3) placed Plaintiff in a cell with a person who had mental health issues, who sprayed the cell with bodily fluids and claiming that he was HIV positive (Count II); and 4) That Delaware County had a custom, policy and practice of placing inmates in confinement conditions that worsen emotional distress related to psychological conditions like PTSD and place inmates in cells with mentally ill prisoners who should be separated from the prison population (Count III). (Document 40).

6.      For reasons set forth in Defendants' Memorandum of law, Plaintiff has failed to state a claim for relief against the Moving Defendants and summary judgment is appropriate.

7.      Accordingly, Moving Defendants respectfully seek relief in the form of dismissal of the Complaint with prejudice.

WHEREFORE, the Moving Defendants, Delaware County and Officer Raymond, respectfully request this Honorable Court to grant their Motion for Summary Judgment and dismiss Plaintiff's Complaint with prejudice.

By:      /s/ Robert M. DiOrio
         ROBERT M. DIORIO, ESQ.
         Attorney I.D. No.: 17838

         /s/ Matthew H. Fry
         MATTHEW H. FRY, ESQ. Attorney
         I.D. No.: 83131
         21 West Front Street
         P.O. Box 1789
         Media, PA 19063
         (610) 565-5700
Date: January 12, 2017          (610) 891-0652 (facsimile)

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN MARCHETTI | : | |
| | : | |
| | : | NO.: 15-CV-4676 |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PAROLE AGENT DIRENZIO, ET AL. | : | |

DEFENDANTS, DELAWARE COUNTY AND OFFICER RAYMOND'S
MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION FOR SUMMARY JUDGMENT</u>

Defendants, Delaware County and Officer Raymond (hereinafter referred to as "Answering Defendants.") hereby set forth this Memorandum of law in support of their Motion for summary judgment and in support thereof avers as follows:

**I.     <u>STATEMENT OF FACTS AND PROCEDURAL HISTORY</u>**

    **A.     <u>Plaintiff's Allegations</u>**

This action was commenced via Complaint on August 17, 2015. (Document 1). Answering Defendants filed a Motion to Dismiss on September 22, 2015 and in response Plaintiff filed an Amended Complaint on November 5, 2015. (Documents 13, 29).

Plaintiff's original Complaint asserts multiple claims against various defendants at different locations, claiming that he was held past his sentence because of an alleged false representation made to the Court by persons from the Pennsylvania Department of Probation and Parole, and then transferred to the George W. Hill Correctional Facility, wherein he claims that he was unjustly placed in solitary confinement and then housed (by Officer Raymond) with a mentally unstable inmate who spread bodily fluids throughout the cell and could have

1

been infected with HIV.  (Document 1, ¶21-22).   Answering Defendants are Delaware County and Officer Raymond.  Plaintiff's Amended Complaint states that the Plaintiff was placed in solitary confinement for several weeks by Defendant Delaware County and that Defendant Raymond allegedly escorted the Plaintiff to an area of the prison reserved for mentally unstable prisoners.  (Document 29, ¶15-16).

After oral argument, Plaintiff filed a Second Amended Complaint that alleged that Defendants Officer Raymond and Delaware County 1) kept Plaintiff in solitary confinement knowing that this would aggravate his PTSD (Count I); 2) failed to provide Plaintiff with medication at the proper dosage or at proper times; 3) placed Plaintiff in a cell with a person who had mental health issues, who sprayed the cell with bodily fluids and claiming that he was HIV positive (Count II); and 4) That Delaware County had a custom, policy and practice of placing inmates in confinement conditions that worsen emotional distress related to psychological conditions like PTSD and place inmates in cells with mentally ill prisoners who should be separated from the prison population (Count III). (Document 40).

B.   **Discovery**

1.   **Documents**

Discovery has been taken and documents and interrogatories have been exchanged.  The documents produced indicate that Plaintiff was incarcerated at the George W. Hill Correctional Facility beginning on April 3, 2014.  (Inmate Housing History attached as Exhibit J.)[1] According to his cellmate history, after intake he was placed in Unit 8B from April 4, 2014 to April 17, 2014.  Although Plaintiff claims he was put in solitary for two weeks upon his arrival at

---

[1] For the convenience of the Court and the parties, Defendants will rely on joint exhibits that are being filed separately with the Court.  These joint exhibits apply to both Motions for Summary Judgment.

GWHCF, he had a cellmate on April 6 to 9, April 12 to 17.  (Cellmate History attached as Exhibit K).  Thus, according to the prison's records, Plaintiff was alone in his cell on April 4 and 5, and part of April 11.

Plaintiff then claims that he was placed in a mentally unstable cellmate, Brandon Farris, for nine days.  However, the cellmate history shows that Plaintiff only shared his cell with Mr. Farris for five days, from April 17 to April 22.  (Exhibit K).

### 2.    Depositions

Defendant Officer Raymond was deposed and stated the following:  1) Defendant Raymond is a Corrections officer;  2) only the Unit supervisor has the authority to transfer inmates between cells;  3) if an inmate wanted to request a cell change, he could talk to a corrections officer and the officer would speak with the Unit supervisor.  (Deposition of Anthony Raymond, attached as Exhibit E, pp. 8, 16, and 27).   Thus, Defendant Raymond did not have the authority to assign inmates to particular cells or transfer them to other cells without authorization from the Unit Supervisor.

Witness Michael Moore was also deposed by the Plaintiff.  Mr. Moore testified that 1) he is the housing coordinator at GWHCF; 2) inmates were assigned to Unit 8 for classification purposes before being sent to the appropriate unit in the prison; and 3) to be transferred to Unit 10A, the Plaintiff would have had to have been evaluated by him and by medical.  (Deposition of Michael Moore, attached hereto as Exhibit D, pp. 10-11, 13-15).

Plaintiff was deposed and stated the following:  1) He did not see or hear from Defendant Raymond while he was first housed in Unit 8;  2) He was placed in the mental health unit of the prison (Unit 10A) by Michael Moore after speaking to medical;  3) He claims that he was supposed to be housed alone but Raymond refused to do so after speaking with someone in the

"control unit" of Unit 10A;  4)  He was housed with Brandon Farris who had bad hygiene, urinated on the floor, kept trash in his cell, and told the Plaintiff he was HIV positive, but never attempted to harm or assault the Plaintiff;  5) Plaintiff believed that he was housed with Mr. Farris for nine (9) days, but admitted it could have been less since the records of GWHCF show it was only five (5) days;  6) Plaintiff filed a grievance about not being housed alone with medical, but did not mention Defendant Raymond or Mr. Farris' bad hygiene;  7)  Plaintiff believes he may have told Defendant Raymond about Mr. Farris' behavior;  8) When Plaintiff changed cells, Plaintiff simply left his cellmate Mr. Farris and just went into another cell and told Raymond about it and Raymond approved the transfer;  9)  Plaintiff has PTSD and there are several triggers that could induce his symptoms;  10) At no time did Mr. Farris' behavior trigger any of the things that would cause Plaintiff to suffer from his PTSD.  (Plaintiff's deposition attached as Exhibit A).

Based upon discovery of Plaintiff's claims, Defendants Delaware County and Defendant Raymond are entitled to summary judgment.

## II.    LEGAL STANDARD ON A MOTION FOR SUMMARY JUDGMENT PURSUANT TO FRCP 56.

Federal Rule of Civil Procedure 56(c) provides that Summary Judgment is appropriate if "the pleadings, depositions, Answers to Interrogatories, and admissions on file, together with the Affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56.  The Supreme Court has recognized that the moving party "bears the initial responsibility of informing the District Court of the basis for its motion, in identifying those portions...which it believes demonstrates the

absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party has filed a properly supported motion, the burden shifts to the non-moving party to "set forth specific facts showing there is a genuine issue for trial." Fed. R.Civ.P. 56(e). An issue is material only if it could affect the result of the suit under governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986).

All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-movant must supply sufficient evidence, and not mere allegations, for a reasonable jury to find in its favor. *Olson v. General Electric Astrospace*, 101 F.3d 947, 951 (3d. Cir. 1996). "[T]here can be 'no genuine issue as to any material fact"... [where the non-movant's] complete failure of proof concerning an essential element of [its] case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 317. Citing *Celotex*, the Third Circuit has stated: "the non-moving party cannot resist a properly supported Motion for Summary Judgment merely by restating the allegations of his Complaint; rather, he must point to concrete evidence in the record that supports each and every essential element of his case." *Jones v. Beard*, 145 Fed.Appx. 743 (3d. Cir. 2005). The non-movant must base his opposition on concrete evidence in the record. *Celotex Corp.*, 477 U.S. at 322-23. The failure of the non-movant to cite such evidence entitles the moving party to summary judgment.

Moreover, the Supreme Court has noted that "when opposing parties tell two (2) different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a Motion for Summary Judgment." *Scott v. Harris*, 117 S.Ct. 1769, 1776 (2007).

**III.**   **LEGAL ARGUMENT**

    **A.**   <u>**Plaintiff has failed to set forth Evidence in Discovery against Delaware County.**</u>

        1.   **Delaware County Does Not Manage The George W. Hill Correctional Facility**

The allegations against Delaware County in this lawsuit are made under the mistaken belief that Delaware County employs, supervises, and or manages the staff at GWHCF. However, it has been long recognized under Pennsylvania statute, and confirmed by case law, that the entity known as the GWHCF is operated by the Delaware County Board of Prison Inspectors ("DCBPI").  Delaware County Board of Prison Inspectors is responsible for the management of the George W. Hill Correctional Facility pursuant to special legislation.  *See Bond v. County of Delaware*. 368 F.Supp. 618 (1973) (recognizing that the Act of April 11, 1866, P.L. 588 confers responsibility for governance and management of the Delaware County Prison upon the Delaware County Board of Prison Inspectors).

Accordingly, the County of Delaware, which is a separate legal entity from the DCBPI (s*ee, Mari Schaefer v. Delaware County,* OOR, Docket No.: AP 2010-0752), is not the legal entity charged with the management of the GWHCF, and therefore, must be dismissed with prejudice from this action.

        **2.**   **Plaintiff Fails To Set Forth a *Monell* claim under § 1983:**

Even if the Plaintiff can show that Delaware County is responsible for the running of GWHCF, Plaintiff has presented no evidence to prove his *Monell* claim.  Plaintiff has brought his claims against Delaware County in Count III under a theory of municipal liability.  However, a municipality, can only be found liable where the municipality itself has caused the constitutional violation at issue.  *City of Canton v. Harris*, 489 *U.S.* 378 (1989).  In other words,

"respondeat superior or vicarious liability will not attach under §1983 solely because it employs an alleged tortfeasor." *Id.*; *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)

In order to properly state a claim against a municipality under §1983, a plaintiff is required to allege the civil rights violation occurred as a result of a policy or custom. *Monell v. New York Dep't of Social Services,* 436 U.S. 658 (1978).  Under *Monell*, a city, municipality, or private entity that is a state actor "may not be held vicariously liable under section § 1983 for the actions of its agents" since "[t]here is no respondeat superior theory of municipal liability." *Sanford v. Stiles,* 456 F.3d 298, 314 (3d Cir. 2006) (citing *Monell*, 436 U.S. 658 at 691 (1978)). Rather, a municipality may be held liable "only if its policy or custom is the 'moving force' behind the constitutional violation." *Sanford*, 456 F.3d at 314.  The existence of a policy or custom can be established (1) by showing that a "decision maker possessing final authority to establish municipal policy with respect to the action issued an official statement of policy," *Jimenez v. All AM Rathskellar*, 503 F.3d 247, 250 (3d Cir. 2007) (*quoting, Pembaur v. City of Cincinnatti*, 475 U.S. 469, 481 (1986)), or (2) by demonstrating that a "custom" exists when, though not authorized by the law, the practices of state officials [are] so permanent and well settled that they operate as law." *Id. (quoting Monell,* 436 U.S. at 690).

Once a policy or custom is identified, a plaintiff must establish that the municipality maintained a policy or custom with "deliberate indifference" to the constitutional deprivations that the policy or custom caused. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *see also, Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996 (stating that the "deliberate indifference" standard, though originally created in the context of a failure to train claim, has been applied to other claims of municipal liability based on policy or custom).  With respect to deliberate indifference, "something more culpable [must be shown] than a negligent failure to

recognize a high risk of harm to plaintiffs." *Black by Black v. Indiana Area School District*, 985 F.2d 707, 712-13 (3d Cir. 1993) (*quoting Colburn v. Upper Darby*, 946 F.2d 1017, 1025 (3d Cir. 1991)).  A plaintiff must establish that the deliberate indifference to which he was subjected came about as a result of the policy.  *See, Monell* 436 U.S. at 690-91.

3. **Analysis of facts as applied to above standard:**

Plaintiff's Complaint alleges generally that Delaware County failed to provide Plaintiff with medical care in Count I and subjected the Plaintiff to cruel and unusual punishment in Count II.  (Document 40).  However, Plaintiff fails to make any specific allegations as to Defendant Delaware County in these counts. (Document 40).

In Count III of the Second Amended Complaint, Plaintiff states that Delaware County has a custom or policy of placing prisoners in confinement conditions that worsen emotional distress and place inmates in cells with mentally ill prisoners.  (Document 40, ¶46).

In addition to the fact that Delaware County is not the proper municipal entity that is assigned to supervise the prison, Plaintiff has alleged absolutely no facts to demonstrate any alleged customs or policies of Delaware County to support his claims in the Second Amended Complaint.  To the contrary, discovery has shown that Plaintiff has merely alleged that he was treated unconstitutionally by a corrections officer that is employed by private entity Community Education Centers, Inc.  He has not pleaded any other example(s) of past analogous conduct of Defendants that match Plaintiff's own pleaded circumstances. The Supreme Court has made it clear that a single incident of an unconstitutional activity is insufficient to impose liability under *Monell*. *City of Oklahoma City v. Tuttle*, 105 S.Ct. 2427, 85 L.Ed.2d 791, 53 USLW 4639 (1985). *Accord Pahle v. Colebrookdale, Tp.* 227 F.Supp.2d 361 (E.D.Pa. 2002)(proving one incident of misconduct, however severe, cannot in and of itself

engender municipal liability under Sec. 1983).

Plaintiff has failed to demonstrate facts, which if proven would establish that insufficient policies or customs caused his alleged constitutional deprivation. This is merely another attempt to bring this claim within the ambit of Section 1983 when, at most, Plaintiff is essentially making a claim for vicarious liability, which is, by its nature, impermissible under Section 1983. Plaintiff should not be permitted to advance a *Monell* claim in the absence of discovery which sets forth detailed factual allegations of the existence of a policy and/or custom of deliberate indifference. Therefore, Defendant Delaware County is entitled to summary judgment.

### B.   Plaintiff's Conditions of Confinement Fail To State A Claim Under § 1983.

#### 1.   Plaintiff Claims That His Cellmate Was Not Hygienic Is Insufficient To State A Constitutional Claim.

Plaintiff's claim in Count II of the Second Amended Complaint is that he, while incarcerated at the George W. Hill Correctional Facility, was placed in a cell for five (5) to nine (9) days with a cellmate that urinated on the floor, wiped feces on a towel, claimed to be HIV positive, and had other hygiene issues.[2]  Such claims, where Plaintiff was not physically assaulted or attacked and suffered no injuries or harm, and there is no indication that his cellmate was dangerous or that Defendants knew of any danger to the Plaintiff, does not rise to the level of a constitutional violation.

Plaintiff's claims are brought pursuant to the Eighth Amendment, alleging cruel and unusual punishment based on his conditions of confinement.  However, rather than alleging that the prison conditions themselves were problematic, Plaintiff alleges that his cellmate's

---

[2] Plaintiff claims he was in the cell with Mr. Farris for nine (9) days, but the prison records uniformly show that he was in the cell with Mr. Farris for only five (5) days. (Exhibit K).

hygiene practices were so bad such that it created a constitutional violation based on his living conditions over five (5) to nine (9) days while incarcerated with his cellmate.

It is Defendants' contention that there is no deliberate indifference to Plaintiff's needs. However, the alleged set of facts, even if we were to assume them to be true for the purposes of this motion, fail to state an Eighth Amendment claim.

In the case of *Liles v. Camden County Department of Corrections,* 225 F. Supp. 2d 450 (D. N.J. 2002), the Court faced similar claims by two sentenced inmates that alleged Eighth Amendment constitutional claims based upon unsanitary conditions, including spoiled food, dirty showers, and having urine from other inmates splashed on them from having to sleep on the floor close to the toilet.  The Court, in deciding these claims, found that the analysis in the Supreme Court case of *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) applied to prison condition claims:

> In *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), the United States Supreme Court articulated the following two-part test for determining whether an Eighth Amendment violation had been committed by a prison official based on inadequate prison conditions: (1) a sufficiently serious constitutional deprivation; and (2) deliberate indifference by the prison official-defendants. *Id.* at 834, 114 S.Ct. 1970; *see also Beers–Capitol v. Whetzel,* 256 F.3d 120, 130 (3d Cir.2001).

*Liles v. Camden County Department of Corrections,* 225 F. Supp. 2d 450, 457 (D. N.J. 2002). In performing the analysis of the first part of the test, the Court determined that inadequate mattresses, dirty showers, smelly food trays and spoiled food did not create a constitutional violation.  In fact, the Court found that the only claim that would survive summary judgment was the claim alleging fighting as a result of urine being splashed on inmates when another inmate was using the toilet.  However, the Court made clear that the only reason this claim survived was because of the physical altercations and injuries as a result of those altercations,

finding that "Physical safety is one of the basic necessities of live to which prisoners are entitled." *Id.* at 462.  In fact, the Court held that it the threshold for finding a constitutional violation for such prison conditions focused on the knowledge of the defendants of "a threat to the health and safety" of the inmate.  *Id.*

To support this premise that it was the inmate fighting, and not the splashing of urine, which supported the claim in the *Liles* case, the Court cited the case of *Blizzard v. Watson*, 892 F.Supp. 587 (D. Del. 1995) for the purpose of finding that splashed urine on an inmate's leg was <u>not</u> sufficient to find a constitutional deprivation.  In doing so, the District Court cited the Supreme Court's ruling in *Wilson v. Seiter,* 501 U.S. 294, 298, 303, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991), stating as follows:

> The Supreme Court has stated that in order to establish a constitutional violation based on conditions of confinement, a plaintiff must prove that defendants acted with deliberate indifference to deprive them of "the minimal civilized measure of life's necessities." *Wilson v. Seiter,* 501 U.S. 294, 298, 303, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991). The Court further elaborated on this standard, stating that a constitutional violation will be found only when the conditions of confinement "have a mutually enforcing effect that produces the deprivation of a single identifiable human need such as food, warmth, or exercise," and that "[n]othing so amorphous as 'overall conditions' can rise to the level of [such a violation] when no specific deprivation of a single human need exists." *Id.* at 303–04, 111 S.Ct. at 2327.

*Blizzard v. Watson*, 892 F.Supp. 587, 598 (D. Del. 1995).  Applying this analysis the Court found that this claim, among other violations, did not rise to the level of depriving the Plaintiff of food, warmth, or exercise and did not threaten the inmate's health or safety, stating:

> Moreover, plaintiffs have failed to allege facts from which a reasonable fact-finder could conclude that they have been deprived of "identifiable human needs" while housed in the ASDA. *See Sellers v. Henman,* 41 F.3d 1100, 1102 (7th Cir.1994). Despite their allegations of toilets close to beds, low-calorie food, poor ventilation, and a broad allegation of denial of meaningful exercise, plaintiffs have not shown that they have been denied food or exercise, or that the ventilation is so poor as to pose a risk of serious harm. In fact, their statement of facts

11

> suggests inmates in the ASDA are being fed, allowed exercise, and given access
> to bathroom facilities. Furthermore, plaintiffs have not offered any facts that
> would suggest defendants have acted with deliberate indifference. The conditions
> alleged by plaintiffs appear to constitute "amorphous conditions which do not
> indicate the deprivation of a particular human need." *Hoover v. Watson,* 886
> F.Supp. 410, 416–17 (D.Del.1995). Consequently, the court will grant defendants'
> motion for a summary judgment on these claims.

*Id.* at 598.  Lastly, the application of our case to the standard set forth in the case of *Farmer v.*

*Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), requires that the conditions

subject the Plaintiff to a "substantial risk of serious harm."  *Id.* at 828.

In our case, Plaintiff has alleged no facts that would create a substantial risk of serious

harm or a serious risk to his health or safety, and he does not claim a denial of life's necessities

such as denial of food, warmth or exercise.  Rather, Plaintiff alleges that for nine (9) days,

Plaintiff was with a roommate who urinated on the floor, wiped feces on his own towel, told

Plaintiff he was HIV positive, and would keep trash in the cell and had otherwise poor

hygiene. (Exhibit A, pp. 138-39).  Plaintiff made clear that his cellmate never threatened or

caused him any physical harm, and did nothing to intentionally cause Plaintiff any physical or

emotional harm. (Exhibit A, pp. 138-39).  No urine or feces was splashed on the Plaintiff, and

no contact was made by Mr. Farris with the Plaintiff that would cause him to fear contracting

HIV or any other disease.  (Exhibit A, pp. 138-39, 160-61).  Most significantly, Plaintiff

admitted that Mr. Farris did not set off any of his triggers related to his heath condition of

PTSD.  (Exhibit A, pp. 160-61).  While Plaintiff claims that he had to watch Mr. Farris and

was afraid to go to sleep, this was not due to any threat by Mr. Farris and Plaintiff's subjective

fears do not rise to a constitutional violation.  In addition, as stated below, Plaintiff's failure to

allege that Mr. Farris' conduct did not aggravate his known health condition of PTSD also

eliminates the possibility that Defendant Raymond or anyone else acted with deliberate

indifference to the Plaintiff.

2.  **Plaintiff Fails To State Facts To Support A Claim That Defendant Raymond Or Delaware County Acted With Deliberate Indifference.**

Even if this Court were to find that putting an inmate with a cellmate who has bad hygiene practices create a constitutional violation, such a violation was not created or caused by Defendant Raymond, who had no control or authority to assign Plaintiff any particular cell or to change Plaintiff's cell.  There is also no proof of deliberate indifference to Plaintiff's health or safety, as Plaintiff was never in any danger or threat of harm and merely placing the Plaintiff in a cell with another inmate, by itself, is insufficient to prove deliberate indifference as a matter of law.

The Eighth Amendment requires prison officials to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).  "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. To prevail on a failure to protect claim, the prisoner must show: (1) "that he is incarcerated under conditions posing a substantial risk of serious harm", and (2) that "the official knows of and disregards an excessive risk to inmate health or safety." Id. at 834-38 (Emphasis added).

With respect to the second element, the court must determine whether the official acted with a sufficiently culpable state of mind because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Collins v. Bledsoe*, 2011 U.S. Dist. LEXIS 101365, (M.D. Pa. 2011) (Kane, J.) (quoting *Farmer*, 511 U.S. at 834). Deliberate indifference requires that the official "both be aware of facts from which the inference could be drawn that a

13

substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 834-38. It is not an objective test for deliberate indifference; rather, the court must look to what the prison official actually knew, rather than what a reasonable official in his position should have known. *Id. See also Shelton v. Bledsoe*, 2012 U.S. Dist. LEXIS 153059, (M.D. Pa. 2012) (Nealon, J.).

In *Farmer, supra*, the Supreme Court stated

> [I]f an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past,' and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

*Farmer*, 511 U.S. at 842-43. Thus, Plaintiff is obligated to produce sufficient evidence to support the inference that Defendants '"knowingly and unreasonably disregarded an objectively intolerable risk of harm." *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 132 (3d Cir. 2001). It is not enough to assert that a defendant should have recognized the risk; the evidence must be sufficient to support the inference that "the defendant must have recognized the excessive risk and ignored it." Id. at 138.

Plaintiff will only be able to present a claim if he has identified the persons who failed to take preventative action, as *respondeat superior* cannot form the basis for liability under §1983. *See Urrutia v. Harrisburg County Police Dept.,* 91 F.3d 451 (3d Cir. 1996).

Plaintiff fails to state any facts to support that Defendant Raymond acted with deliberate indifference. There is no evidence that Defendant Raymond knew that Mr. Farris was the inmate assigned to Plaintiff's cell, that Mr. Farris had a history of bad hygiene, urinated and spread feces around the cell, was HIV positive, or acted in any way that would compromise the

14

health and safety of the Plaintiff.  In fact, Plaintiff testified that when he was escorted to his cell by Officer Raymond, the cell was unoccupied.  (Exhibit A, pp. 135-36).  Moreover, since Defendant Raymond did not have any say in transferring of inmates, and worked in all different sections of the prison during this time, there is nothing more than mere speculation to show deliberate indifference as to Defendant Raymond. (Deposition of Defendant Corrections Officer Anthony Raymond attached hereto as Exhibit E, pp. 9-10, 16, and 27).  Defendant Raymond also had no access to an inmate's medical records.  (Exhibit E, pp. 29-31).

To find liability against Defendant Raymond, Plaintiff would have to show that 1) Defendant Raymond usurped his supervisor's authority to transfer the Plaintiff to a different cell other than what he was assigned; 2) Brandon Farris had a history of substantially dangerous behavior and Defendant Raymond had actual knowledge of his behavior; 3) Defendant Raymond not only knew of Mr. Farris' behavior, but had "knowingly and unreasonably disregarded an objectively intolerable risk of harm" based on observations or other information regarding Mr. Farris' behavior and/or; 4) Defendant Raymond illegally and improperly gained access to Mr. Farris' medical file and knew that his actions would harm others.

Plaintiff has absolutely no evidence to even suggest any facts similar to the above, let alone provided the needed information to show deliberate indifference.  In fact, the facts stated by Plaintiff in his deposition rule out any possibility that Defendant Raymond could have known that Mr. Farris was a threat to Plaintiff since none of Mr. Farris' actions were directed at Plaintiff and Plaintiff was never threatened, harmed or even physically touched by Mr. Farris or his bodily fluids.

Instead, Plaintiff claim only consists of his speculative opinion testimony, that

Defendant Raymond must have had control over Plaintiff's cell assignment and was angry about Plaintiff asking him to do his job, stating:

> Q.     How do you know – with respect to the first sentence how do you know that Raymond was the decisionmaker who assigned you to your cell?
>
> A.     I judged that based on his statements that he said, fuck no, he's not getting a cell by himself.  I'm not moving everybody around just so he can have a cell by himself.  I base that on his statement to me.
>
> Q.     Okay. And what about the next sentence where it says Raymond knowingly put Plaintiff in harms way?
>
> A.     He [Raymond] was aware of my situation.  He was aware that the sign said – that the order said house alone.  He was aware of my mental health status and he specifically put me in a cell with Brandan Farris because he was pissed because I had the audacity to say, hey, do your job the right way, do what you're supposed to do.
>
> Q.     So that was your opinion that he was somehow angry because you had some kind of house alone order?
>
> A.     Correct.

(Exhibit A, pp. 152-53).  Discovery has revealed that Plaintiff's "opinion" is not supported by the evidence.  Plaintiff was not physically harmed or touched by Mr. Farris. (Exhibit A, p. 138-139).  Plaintiff's "situation" is that he had PTSD, but Plaintiff readily admits that Mr. Farris did nothing to aggravate or trigger his PTSD symptoms.  (Exhibit A, pp. 160-61).   And, to the contrary, the record evidence shows that in the response to Plaintiff's grievance sent to medical, he was told he was never going to be housed alone.  (Exhibit F, Marchetti-2).  Moreover, Plaintiff has presented no evidence to contradict his own testimony that Raymond had no authority to assign the Plaintiff to any cell, and even Plaintiff admits that before he was assigned to a cell, Defendant Raymond had to go to the "control room" and consult with someone there before he was assigned. (Exhibit A, pp. 156-58).

And, even if medical had promised that Plaintiff would be housed alone and reneged on that promise, that has nothing to do with Defendant Raymond, as Plaintiff also admitted

that he never saw Defendant Raymond before his transfer to Unit 10A and Defendant Raymond had nothing to do with his medical care.  (Exhibit A, pp. 125, 132).  Furthermore, Plaintiff does not claim any harm other than his repulsion to the habits of his roommate and his own refusal to sleep. Plaintiff presents no evidence that Defendant Raymond was somehow involved in Plaintiff's medical care or would have known that Plaintiff would be somehow harmed in being housed with such a roommate.  Under these circumstances, there can be no deliberate indifferent on the part of Defendant Raymond.

Lastly, to the extent Plaintiff claims that Defendant Raymond would not permit the Plaintiff to change cells, according to the prison records Plaintiff stayed in a cell with Brandon Farris for five (5) days, from April 17, 2014 to April 22, 2014.  (Exhibit K)  The duty rosters for that time period show that Defendant Raymond worked on Plaintiff's Unit on three of those days, working first shift.  (Shift Rosters attached as Exhibit L).  Thus for three, eight hour shifts over a five day period, Defendant Raymond was on the Plaintiff's Unit, but for all of the other times of each day and for two entire days, Defendant Raymond was not on the Unit and Plaintiff could have requested a cell change with any of the officers (or Sergeants) on second and third shift on days with Defendant Raymond worked, or at any time on the days that Defendant Raymond did not work on the Unit.  Moreover, while Plaintiff claims that he complained about his housing situation to medical and he "believes" he also told Defendant Raymond, at no time does he allege that his request was refused.  Rather, Plaintiff was able to change his cell and cellmate after five (5) days according to prison records.  Plaintiff claims that Defendant Raymond allowed Plaintiff to chance cells.  (Exhibit A, p. 150).

Since the method of confinement does not violate Plaintiff's constitutional rights, and there is no evidence that Defendant Raymond assigned Plaintiff to his cell, knew of Plaintiff's

cellmate, or knew that Mr. Farris having a cellmate would cause a substantial risk of serious harm to Plaintiff, there can be no actionable claim under §1983 and summary judgment should be granted.

### C.     Plaintiff Has Failed To Present Any Evidence to Support His Claim Of Deliberate Indifference To His Medical Needs.

Count I of Plaintiff's Second Amended Complaint fails to state a constitutional claim against Defendant Raymond.  Specifically, Raymond, a correctional officer, is not a part of the medical staff, and under the case law cannot be deliberately indifferent to an inmate's medical needs if the Plaintiff was under the care of the prison doctor.  Because discovery reveals that Plaintiff was provided medical care at GWHCF, and has not alleged any facts to support claims against C/O Raymond, Raymond should be granted summary judgment.

Plaintiff readily admits that Raymond is a corrections officer, and also said that he had nothing to do with his medication or medical care.  (Exhibit A, p. 182).  As the Courts in the Third Circuit have stated, "where a prisoner is being treated by medical personnel, non-physician prison officials cannot be deliberately indifferent for failing to intervene in the medical treatment."  *Glatts v. Lockett,* No. 09-29, 2011 WL 772917 at *9 (W.D. Pa. Feb. 28, 2011); see also *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (Defendants who were not physicians could not be deliberately indifferent to medical needs of patient when patient was treated by the prison doctor); and *Thomas v. Zinkel,* 155 F. Supp. 408, 413 (E.D. Pa. 2001)(non-physicians, such as health care administrators, cannot be found deliberately indifferent when the inmate is receiving care from a doctor.)  C/O Raymond is not alleged to be a physician nor has Plaintiff alleged that C/O Raymond is part of the medical staff.  Rather, Plaintiff admits that Defendant Raymond had nothing to do with his medication.  (Exhibit A, p. 182).     Therefore, since Raymond is not a medical staff member and provided no medical care to the Plaintiff, Defendant

Raymond must be dismissed from Count I of the Complaint with prejudice.

**IV.     CONCLUSION**

Therefore, as set forth above, Plaintiff has set forth insufficient evidence of any alleged claim against Moving Defendants, and Plaintiff's claims are not actionable under § 1983 and Summary Judgment should be entered on all claims, dismissing Plaintiff's Complaint with prejudice.

<div style="margin-left:40%">

Respectfully submitted:

**DiORIO & SERENI, LLP**

</div>

By:     **/s/ Robert M. DiOrio**_____
        **ROBERT M. DIORIO**
        I.D. No.: 17838

        **/s/ Matthew H. Fry**_____
        **MATTHEW H. FRY**
        I.D. No. 83131
        Front & Plum Streets
        P.O. Box 1789
        Media, PA 19063
        (610) 565-5700

Date: January 12, 2017

19

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN MARCHETTI** | **:** | |
| | **:** | |
| | **:** | **NO.: 15-CV-4676** |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| | **:** | |
| **PAROLE AGENT DIRENZIO, ET AL.** | **:** | |

## CERTIFICATE OF SERVICE

We, Robert M. DiOrio and Matthew H. Fry, attorneys for Defendants, hereby certify that a true and correct copy of the foregoing Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56 was filed electronically via the Court's ECF system on the date below and has been sent electronically to all counsel of record.

Date: <u>January 12, 2017</u>           **BY:**     /s/ Robert M. DiOrio
                                                 **ROBERT M. DiORIO, ESQ.**


                                                 /s/ Matthew H. Fry
                                                 **MATTHEW H. FRY, ESQ.**
                                                 21 West Front Street
                                                 P.O. Box 1789
                                                 Media, PA 19063
                                                 (610) 565-5700 (telephone)
                                                 (610) 891-0651 (facsimile)