

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN MARCETTI,

          Plaintiff,

    v.

MARIO DIRENZIO, et al.,

          Defendants.

CIVIL ACTION
NO. 15-04676

**FILED**

JUL 11 2017
KATE BARKMAN, Clerk
By_____X_____Dep. Clerk
July 11, 2017

**OPINION**

**Slomsky, J.**

## I.     INTRODUCTION

Plaintiff John Marchetti brought this suit against several Defendants for alleged violations of Section 1983 of the Civil Rights Act. Commonwealth Defendants Tim Pleacher and Ralph DiBridge filed a joint Motion for Summary Judgment (Doc. No. 61) at the close of fact discovery.  Additionally, Defendant Officer Raymond filed a Motion for Summary Judgment. (Doc. No. 59.) For reasons that follow, both Motions for Summary Judgment (Doc. Nos. 59, 61) will be granted.

## II.     BACKGROUND

### a. Facts Relating to Defendants Pleacher and DiBridge

In the late 1990s, Plaintiff John Marchetti was incarcerated at a New Jersey state prison where he was physically and verbally abused. (Doc. No. 70 at 9.) This led to a diagnosis of Post-Traumatic Stress Disorder ("PTSD").  PTSD is a mental health condition that Plaintiff continues to suffer. (Id. at 10.)

On January 12, 2012, Plaintiff began serving a sentence of one-and-a-half to three years' incarceration in a Pennsylvania state prison. (Id.) In May 2012, Plaintiff was sent to the State

1

Correctional Institution at Laurel Highlands ("SCI Laurel Highlands" or "Laurel Highlands"), where he was prescribed Celexa for his self-reported PTSD.[1]  (Id.)  Plaintiff's maximum release date was March 29, 2014.  (Id.)  While he was incarcerated at Laurel Highlands, Plaintiff regularly met with mental health professionals including a psychologist and psychiatrist until at least March 27, 2014.  (Doc. No. 61-2 at 2.)

More specifically, while Plaintiff was incarcerated at Laurel Highlands, a psychologist attempted to meet with him daily between March 27, 2014 and April 3, 2014.  (Doc. No. 61-2 at ¶ 19.)  Plaintiff was initially responsive to the interactions, but later declined the psychologist's attempts to meet with him because Plaintiff did not consider the meetings useful.  (Id.)  Plaintiff was also seen by a psychiatrist at least once between March 27 and April 3.  (Doc. No. 61-2 at ¶ 20.)  It was at his meeting with the psychiatrist that Plaintiff requested that his Celexa dose be increased.  (Id. at ¶ 21.)  Although the psychiatrist rejected Plaintiff's request to increase the medication's dosage, Plaintiff still received a regular Celexa dosage of 20mg throughout his time in the Restricted Housing Unit at Laurel Highlands ("RHU").  (Id. at ¶¶ 21-22.)  In his deposition, the psychologist stated that he did not believe Plaintiff's housing in the RHU posed a risk of harm to his mental health.  No records have been produced that show that any member of the mental health staff was concerned at all about a worsening of Plaintiff's condition while he was housed in the RHU.  (Id. at ¶¶ 23 and 25.)

On March 27, 2014, while still incarcerated at Laurel Highlands, Plaintiff was notified that he would not be released on his maximum release date because a detainer for an alleged parole violation had been lodged against him by Delaware County.  (Doc. No. 70 at 10.)  On the same day, Plaintiff was told that he would be placed in the Restricted Housing Unit ("RHU")

---

[1] Celexa is an antidepressant medication.  In re Celexa and Lexapro Mktg. and Sales Practices Litig., 751 F. Supp. 2d 277, 283 (D. Ma. 2010).

until Delaware County was able to take him into the custody of the County. He was scheduled to be picked up by Delaware County on April 3, 2014. (Id.)

On March 28, 2014, Plaintiff met with the Program Review Committee ("PRC"), a three person committee which reviewed Plaintiff's status at the Laurel Highlands prison. The committee included Defendants Pleacher and DiBridge.[2] (Id. at ¶ 26.) Plaintiff was told that he was placed in the RHU for administrative purposes. (Id. at ¶ 27.) At the PRC hearing, Plaintiff explained to Defendants Pleacher and DiBridge that he "(a) suffered from PTSD; (b) that the conditions of the Restricted Housing Unit were triggers for his PTSD; and (c) that as a result, Plaintiff was suffering from PTSD symptoms that were growing worse with Plaintiff's continued stay in the Restricted Housing Unit causing significant mental and emotion[al] harm." (Id. at ¶ 28.) At the PRC hearing, Plaintiff did not state that he was denied mental health care while at Laurel Highlands. (Id. at ¶ 35.) Plaintiff was seen by a psychologist immediately before his hearing as well as the day before the hearing. (Id. at ¶ 36.) Plaintiff did not appear before the PRC again during his time in the RHU. (Id. at 37.) On April 3, 2014, Plaintiff's stay in the Restricted Housing Unit ended when he was transferred to the custody of Delaware County. (Id.)

### b. Facts Relating to Defendant Officer Raymond

On April 3, 2014, Plaintiff was incarcerated at the George W. Hill Correctional Facility following his transfer from Laurel Highlands. (Doc. No. 62 at ¶ 1.) Plaintiff was housed in Unit 8B from April 4, 2014 until April 17, 2014. (Id. at ¶ 2.) On April 17, 2014, after complaining about the conditions of his confinement, Plaintiff was then transferred from Unit 8B to Unit 10A. He remained in Unit 10A until April 22, 2014. (Id. at ¶ 3-4.) Plaintiff was assigned to Unit 10A

---

[2] The third member of the committee is now deceased.

by the housing coordinator, Mike Moore, after Moore consulted with medical staff. (Id. at Ex. A., p. 132-34.) The Housing Coordinator, in conjunction with the medical staff, makes the determination of an inmate's placement in the mental health unit of the prison. (Id. at Ex D., 13-15.) To change an inmate's cell, it was prison protocol for Officer Raymond to request permission from a supervisor. (Id. at Ex. E., 27.) Officer Raymond is a Corrections Officer who needed permission from a supervisor to change an inmate's assigned cell. (Id.) Based on the housing rules, a Corrections Officer was not allowed to move an inmate without permission from a supervisor. Plaintiff did not interact with Raymond until he was moved to Unit 10A. (Id. at ¶6.)

Plaintiff was housed with Brandon Farris for five days while incarcerated in Unit 10A. (Doc. No. 62, at Exs. J, K.) Plaintiff filed a grievance regarding his cellmate, Farris, but never alleged that Farris "was spreading feces or urine in the cell." (Id.) Rather, Plaintiff stated that he was concerned that he might harm his cellmate because he sleepwalks. (Id. at Ex. F.) The grievance stated that Plaintiff should be housed alone because he believed that he became violent in his sleep and would cause injury to his cellmate. (Id.) At no point did Plaintiff state that his cellmate aggravated or adversely affected his mental health or his PTSD. (Id. at ¶ 14.) The Medical Staff at the prison responded to Plaintiff's grievance and stated that he was not supposed to be housed alone. (Id. at Ex. F, Marchetti-4.) Other than the normal restrictions of confinement, Plaintiff was not subject to disciplinary action, punishment, or treated differently than any other inmate. (Id. at ¶ 29.)

### c. The Instant Action

Plaintiff alleges in the Second Amended Complaint that Defendants Pleacher and DiBridge failed to provide him with medical care and treatment which caused severe emotional

4

distress that was connected to Plaintiff's PTSD (Count I). (Doc. No. 42.) Additionally, Plaintiff

alleges cruel and unusual punishment against Defendants Pleacher and DiBridge in violation of

the Eighth Amendment of the United States Constitution (Count II).[3] (Id.) Plaintiff also alleges

a claim against Officer Raymond for knowingly subjecting him to cruel and unusual punishment

by interfering in Plaintiff's medically-directed housing assignment (Count II). (Doc. No. 71 at

14.)

Defendants Pleacher and DiBridge have filed a Motion for Summary Judgment. (Doc.

No. 61.) Plaintiff filed a Response (Doc. No. 70), and Defendants Pleacher and DiBridge filed a

Reply (Doc. No. 72). Additionally, Defendant Raymond filed a Motion for Summary Judgment.

(Doc. No. 59.) Plaintiff filed a Response (Doc. No. 71), and Defendant Raymond filed a Reply

(Doc. No. 75). The Motions are now ripe for disposition.

## III.   STANDARD OF REVIEW

Granting summary judgment is an extraordinary remedy. Summary judgment is

appropriate if "the pleadings, depositions, answers to interrogatories, admissions, and affidavits

show there is no genuine issue of material fact and that the moving party is entitled to judgment

as a matter of law." Montgomery Cnty., Pa. v. MERSCORP Inc., 795 F.3d 372, 376 (3d. Cir.

2015); see also Fed. R. Civ. P. 56(a). A disputed issue is "genuine" only if there is a sufficient

evidentiary basis on which a reasonable jury could find for the non-moving party. Kaucher v.

Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986)). For a fact to be considered "material," it "must have the potential to alter

the outcome of the case." Favata v. Seidel, 511 F. App'x 155, 158 (3d. Cir. 2013). Once the

proponent of summary judgment "points to evidence demonstrating no issue of material fact

---

[3] It appears from the filings that Count I and Count II are nearly identical. Plaintiff's Response
to Defendant's Motion for Summary Judgment states almost verbatim the same responses on
Count I and Count II.

5

exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." Id. (quoting Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d. Cir. 2010) (internal quotation marks omitted)).

In deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. (quoting Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 181 (3d. Cir. 2009) (quotation omitted)). The Court's task is not to resolve disputed issues of fact, but to determine whether there exists any factual issue to be tried. Anderson, 477 U.S. at 247-249. Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the non-moving party's evidence over that presented by the moving party. Id. at 255. If there is no factual issue, and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party. Id. at 250.

The non-moving party may not resist a properly filed motion for summary judgment by relying solely on the unsupported conclusory allegations contained in pleadings. Anderson, 477 U.S. at 248. The non-movant must go beyond the pleadings and affidavits and designate specific facts showing that there is a genuine issue for trial. Id. "[A] party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements." Super Fresh Food Mkts., Inc. v. United Food & Commercial Workers Local Union 1776, 249 F. Supp. 2d 546, 551 (E.D. Pa. 2003). In ruling on a defendant's motion for summary judgment, Plaintiff must show more than a mere scintilla of evidence. Anderson, 477 U.S. at 252. Enough evidence must exist such that a jury could reasonably find for plaintiff. Id. The plaintiff cannot merely

6

rely upon assertions or speculation. Gans v. Mundy, 762 F.2d 338, 341 (3d. Cir. 1985). If the evidence is merely colorable or is not sufficiently probative, summary judgment may be granted. Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 771 (3d. Cir. 2009). Additionally, "the unverified representations of counsel in a brief are not a proper part of the record for consideration on a motion for summary judgment." Prince v. Sun Shipbuilding & Dry Dock Corp., 86 F.R.D. 106, 107 (E.D. Pa. 1980).

Where a non-moving party bears the burden of proof at trial, the moving party's burden may be "'discharged by 'showing'. . . that there is an absence of evidence to support the non-moving party's case.'" Bouriez, 585 F.3d at 771 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If the moving party carries this burden, "the burden shifts to the non-moving party to point to sufficient cognizable evidence to create material issues of fact such that a reasonable jury could find in its favor." Bouriez, 585 F.3d at 771 (internal citation and quotation marks omitted).

## IV.   ANALYSIS

### A. Plaintiff's Eighth Amendment Claim (Count I) Against Defendants Pleacher and DiBridge Will Be Dismissed

Defendants Pleacher and DiBridge argue that Plaintiff has failed to show deliberate indifference to a serious medical need in order to sustain a claim that this right to be free from cruel and unusual punishment under the Eighth Amendment was violated. For this reason Count I should be dismissed. (Doc. No. 31 at 14.) The Court agrees.

Plaintiff brings this action under 42 U.S.C. § 1983 (commonly referred to as "Section 1983"). Under Section 1983, a plaintiff must establish: (1) the violation of a right guaranteed by the United States Constitution and the laws of the United States; and (2) that the alleged

deprivation was committed or caused by a person acting under the color of law.[4] See West v. Atkins, 487 U.S. 42, 48 (1988); see also Piecknick v. Commonwealth of Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994) (quoting Carter v. City of Philadelphia, 989 F.2d 117, 119 (3d Cir. 1993)).

Here, Defendants concede that they were acting under the color of state law. The only issue that remains is whether a constitutional right of Plaintiff was violated. Here, Plaintiff asserts that his right to be free from cruel and unusual punishment under the Eighth Amendment was violated.

In Estelle v. Gamble, the United States Supreme Court held that the failure to provide adequate medical treatment violated a prisoner's Eighth Amendment right only when it results from "deliberate indifference to a prisoner's serious illness or injury." 429 U.S. 97, 105 (1976). In other words, under the Eighth Amendment, a prisoner's "serious medical needs" cannot be met with "deliberate indifference." Estelle, 429 U.S. at 104-05. As the Supreme Court noted in Estelle:

> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 182-183, 96 S.Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or [in the alternative] delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under [§] 1983.
>
> \*       \*       \*
>
> In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

---

[4] Plaintiff is afforded no substantive rights under 42 U.S.C. § 1983, but instead is provided "a remedy for deprivations of rights established elsewhere in the Constitution or federal laws." Kopec v. Tate, 361 F.3d 772, 775-776 (3d Cir. 2004).

It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment

Id. at 290-91.

Thus, in order to sustain his Eighth Amendment claim, Plaintiff must allege "(i) [a] serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."[5] Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (citing Estelle v. Gamble, 97 S.Ct. 285 and Rouse v. Plaintier, 182 F.3d 192, 197 (3d Cir. 1999)). In Farmer v. Brennan, the Court held that a medical need is serious if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." 511 U.S. 825, 834 (1994). See also Woloszyn v. Cnty of Lawrence, 396 F.3d 314, 320 (3d Cir. 2005). Mere allegations of malpractice are not sufficient to establish a claim under § 1983. See Estelle, 429 U.S. at 105; see also Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979).

## 1. Serious Medical Need

First, Plaintiff contends his serious medical need is Post-Traumatic Stress Disorder ("PTSD"). PTSD has been held to be a serious medical condition. See e.g., Saylor v. Nebraska, 812 F.3d 637, 643-44 (8th Cir. 2016); Lee v. City of Elkhart, Inc., 602 F. App'x 335, 339 (7th Cir. 2015); Anduze v. Duncan, No. 14-01153, 2015 WL 3918961, *3 (S.D. Il. Jun. 24, 2015); Maxwell v. Olmsted Cty., No. 10-3668, 2012 WL 466179, *10-11 (D. Minn. Feb. 13, 2012); Doe v. Campos, No. 09-00544, 2009 WL 3126220, at *3 (E.D. Ca. Sept. 23, 2009). Therefore,

---

[5] Additionally, in a civil rights action, a plaintiff must prove that a defendant had personal involvement in committing the alleged violation. See Eppers v. Dragovich, No. 95-7673, 1996 WL 420830, at *4 (E.D. Pa. Jul. 24, 1996) (finding that defendants in civil rights actions must have "personal involvement" in the alleged wrongs). As the Court will note below, Plaintiff has failed to show that Defendants Pleacher or DiBridge were personally involved in decisions regarding his medical care.

9

Plaintiff has shown the existence of a serious medical illness and has met the first prong of an Eighth Amendment violation.

### 2. Deliberate Indifference

Second, Plaintiff contends that prison officials were deliberately indifferent to his serious medical need of treating PTSD. Initially, Plaintiff alleges that Defendants Pleacher and DiBridge refused his medical requests despite appreciating the excessive risk of harm to Plaintiff. Plaintiff claims that Defendants "personally refused [his] medical-care based request to be moved out of the Restricted Housing Unit . . . [and that,] despite having the ability to do so, the Commonwealth Defendants did not take any action to transfer Plaintiff out of the Restricted Housing Unit to relieve Plaintiff's mental and emotional suffering, occurring after Plaintiff's maximum release date." (Doc. No. 70 at 17.) Here, Defendants argue that because they were not part of the medical staff, and because Plaintiff was under the care of the prison doctor, they could not be deliberately indifferent to him as a matter of law. (Doc. No. 61 at 7.) The Court agrees.

"[W]here a prisoner is being treated by medical personnel, non-physician prison officials cannot be deliberately indifferent for failing to intervene in the medical treatment." Glatts v. Lockett, No. 09-29, 2011 WL 772917, at *9 (W.D. Pa. Feb. 28, 2011); see also Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (defendants who were not physicians could not be deliberately indifferent to medical needs of patients when patients were treated by the prison doctor).

Here, Defendants are prison administrators who encountered Plaintiff in their role as members of the Program Review Committee. (Doc. No. 61 at 7.) They did not provide medical or mental health care for Plaintiff. Such care was provided by a psychiatrist and psychologist. (Id.) It is well established that prison administrators are generally justified in believing that a

prisoner under the care of medical experts is in capable hands.  See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004).  Defendants cannot be liable for an alleged constitutional violation simply because Plaintiff's treating health professionals disagreed with his course of action.  See Hagan v. Southers, No. 13-2731, 2016 WL 464380, at *7 (M.D. Pa. Aug. 12, 2016) (". . . an inmates dissatisfaction with a course of medical treatment, standing alone does not give rise to a viable Eighth Amendment claim").  Plaintiff has failed to allege that Defendants had any personal involvement in the alleged violation of his civil rights and therefore there is no cognizable claim against them.

Moreover, Plaintiff agreed that he received medical treatment while at Laurel Highlands. Defendants were not required to personally oversee any action taken with regard to Plaintiff's medical condition, and therefore were not deliberately indifferent to Plaintiff's medical needs. Plaintiff received medical care and was under the supervision of medical personnel while at Laurel Highlands.  Thus, Plaintiff has failed to show that Defendants were responsible for Plaintiff's claims.  At best, the facts here show that Plaintiff was dissatisfied with the level of care he received at Laurel Highlands.  However, an inmate's dissatisfaction with the level of care, even if it rises to a claim of malpractice, does not constitute an Eighth Amendment violation.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).

Viewing the facts in the light most favorable to Plaintiff, it is clear that he is dissatisfied with the medical treatment he received at Laurel Highlands, that the staff at Laurel Highlands were not deliberately indifferent to his PTSD, that Defendants were not responsible for any decline in Plaintiff's health, and that Plaintiff has failed to show deliberate indifference by Defendants.  As a result, Plaintiff's claim (Count I) against Defendants Pleacher and DiBridge will be dismissed.

### B. Plaintiff's Eighth Amendment Claim (Count II) Against Defendants Pleacher and DiBridge Will be Dismissed

Plaintiff also argues that Defendants Pleacher and DiBridge were deliberately indifferent to his medical needs by housing him in confinement with a mentally ill prisoner in violation of his Eighth Amendment rights. (Doc. No. 42 at ¶¶ 39-44.) Defendants argue that this claim fails for the same reason as Plaintiff's previous claim. The Court agrees.

A conditions of confinement claim requires the plaintiff to show that (1) he was subjected to a sufficiently serious deprivation that resulted in the denial of "the minimal civilized measures of life's necessities," and (2) the defendants were "deliberately indifferent to the inmate's health or safety." Jones v. Cnty. Jail C.F.C.F., 610 F. App'x 167, 168 (3d Cir. 2015) (quoting Farmer, 511 U.S. at 834). Courts in this Circuit have found that reduced "privacy in the RHU, the limited access to showers, and the limited access to recreational opportunities and lack of contact visits described . . . do not give rise to Eighth Amendment violations." Cook v. Corbett, No. 14-5895, 2015 WL 4111692, at *8 (E.D. Pa. July 8, 2015).

Here, Plaintiff was subject to typical conditions of the restricted housing: twenty-three hours per day in a cell, meals served in his cell, strip searches, escorts for any movement within the prison, and availability of medical and mental health care professionals. (Doc. No. 61 at 7.) Additionally, as noted previously, Plaintiff has failed to allege facts that suggest Defendants acted with deliberate indifference to his serious medical need by not moving him from the RHU. Therefore, Plaintiff's claim also fails under the second prong of the conditions of confinement test. From the record, it appears that Plaintiff was not denied any necessities, and thus his claim falls short of an Eighth Amendment violation.

### C. Plaintiff's Claim Against Defendant Officer Raymond Will Be Dismissed

As the facts show in this case, Plaintiff also was an inmate at George W. Hill Correctional Facility. Defendant Officer Raymond admits that Plaintiff was housed in a cell with another inmate, but says that he lacked supervisory authority to change Plaintiff's cell assignment. (Doc. No. 59 at 14-16.) Plaintiff alleges, however, that he was housed in an area of the prison reserved for mentally unstable prisoners by Correctional Officer Raymond. (Doc. No. 42 at ¶ 23.) Plaintiff claims that he was:

> placed with a roommate who regularly spread bodily fluids throughout the shared prison cell. Upon information and belief, Plaintiff's cell-mate was HIV positive. During the approximately three (3) weeks with this roommate, Plaintiff could barely sleep. This confinement again caused Plaintiff severe emotional distress connected to Plaintiff's PTSD.

(Id. at ¶ 24.) Plaintiff states that "Raymond specifically was the decision maker who assigned plaintiff to this cell. Raymond knowingly put Plaintiff in harm's way." (Id.) Plaintiff alleges that he is entitled to damages based on the conduct of Defendant Officer Raymond because he knowingly subjected Plaintiff to cruel and unusual punishment by interfering in Plaintiff's medically-directed housing assignment (Count II). (Doc. No. 71 at 14.) Plaintiff claims that this interference led to an Eighth Amendment violation.

Plaintiff alleges that a medical directive stated that he was to be housed by himself for medical purposes. He also states that Officer Raymond was verbally told about this directive when Plaintiff was being escorted by another correctional officer, and that a transfer slip stating that he was to be housed alone was given to Officer Raymond. The slip was not produced during discovery. (Doc. No. 71 at 15.) Officer Raymond has no memory of being told that Plaintiff needed to be housed alone. (Id.) Raymond claims that he had no knowledge that Plaintiff was sharing a cell because when he escorted him to it, the cell was empty. (Doc. No. 59 at 15.)

13

Plaintiff argues that Defendant Officer Raymond acted with deliberate indifference to his serious medical need, Post-Traumatic Stress Disorder "PTSD," by putting him in a cell with another inmate, which negatively affected his PTSD. (Doc. No. 71 at 16.) Specifically, Plaintiff argues that Defendant Officer Raymond defied a medical directive to house Plaintiff alone and instead housed him in a cell with another inmate. (Id.)

As the Court noted above, a conditions of confinement claim requires the plaintiff to show that (1) he was subjected to a sufficiently serious deprivation that resulted in the denial of "the minimal civilized measures of life's necessities," and (2) that the defendants were "deliberately indifferent to the inmate's health or safety." Jones v. Cnty. Jail C.F.C.F., 610 F. App'x 167, 168 (3d Cir. 2015) (quoting Farmer, 511 U.S. at 834). Courts in this Circuit have found that reduced "privacy in the RHU, the limited access to showers, and the limited access to recreational opportunities and lack of contact visits described . . . do not give rise to Eighth Amendment violations." Cook v. Corbett, No. 14-5895, 2015 WL 4111692, at *8 (E.D.Pa. July 8, 2015).

In Liles v. Camden Cnty. Dept. of Corr., the court determined that inadequate mattresses, dirty showers, smelly food trays, and spoiled food did not create a constitutional violation. 225 F. Supp. 2d 450, 457 (D.N.J. 2002). The Liles court found that the threshold for finding a constitutional violation in prison conditions centered on the knowledge of the defendants of the "threat to the health and safety" of an inmate. Id. See also, Blizzard v. Watson, 892 F.Supp. 587, 598 (D. Del. 1995) (finding that splashed urine on an inmate's leg was not sufficient to find a constitutional deprivation). Further, Blizzard reiterated the United States Supreme Court's finding in Wilson v. Seiter that:

> In order to establish a constitutional violation based on conditions of confinement,
> a plaintiff must prove that defendants acted with deliberate indifference to deprive

14

them of "the minimal civilized measure of life's necessities." The Court further elaborated on this standard, stating that a constitutional violation will be found only when the conditions of confinement "have a mutually enforcing effect that produces the deprivation of a single identifiable human need such as food, warmth, or exercise," and that "[n]othing so amorphous as 'overall conditions' can rise to the level of [such a violation] when no specific deprivation of a single human need exists.

\* \* \*

Moreover, plaintiffs have failed to allege facts from which a reasonable fact-finder could conclude that they have been deprived of "identifiable human needs" while housed in the ASDA. Despite their allegations of toilets close to beds, low-calorie food, poor ventilation, and a broad allegation of denial of meaningful exercise, plaintiffs have not shown that they have been denied food or exercise, or that the ventilation is so poor as to pose a risk of serious harm. In fact, their statement of facts suggests inmates in the ASDA are being fed, allowed exercise, and given access to bathroom facilities. Furthermore, plaintiffs have not offered any facts that would suggest defendant have acted with deliberate indifference. The conditions alleged by plaintiffs appear to constitute "amorphous conditions which do not indicate the deprivation of a particular human need." Consequently, the Court will grant defendants' motion for a summary judgment on these claims.

Id. at 587, 598. (internal citations omitted.)

Here, as in Wilson v. Seiter, Plaintiff has failed to allege facts that would show that he was subjected to a substantial risk of serious harm to his health or safety. Plaintiff only alleges that while he was housed with Farris, Farris would urinate on the floor, wipe feces on his own towel, told Plaintiff he was HIV positive, kept trash in the cell, and had poor hygiene. (Doc. No. 59 at Ex. A., 138-39.) Farris never threatened him or caused him physical or mental harm. (Id.) Farris' fecal matter and urine never made contact with Plaintiff. (Id. at 160-61.) Plaintiff does not claim that Farris' conduct aggravated his PTSD. Moreover, as noted above, Officer Raymond was required to ask his supervisors for permission to move inmates and could not do so under his own volition.

Even when viewing the facts in the light most favorable to Plaintiff, he has failed to show that Officer Raymond usurped his supervisor's authority to transfer Plaintiff to a cell different

15

than the one he was assigned to and that Brandon Farris had a history of substantially dangerous behavior that Defendant Officer Raymond had knowledge of. As a result, Defendant Officer Raymond's Motion for Summary Judgment (Doc. No. 59) will be granted.

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment (Doc. Nos. 59, 61) will be granted. All claims against Defendants Raymond, Pleacher, and DiBridge will be dismissed in their entirety. An appropriate Order follows.

ENTERED

JUL 1 2 2017

CLERK OF COURT

16